**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

GREAT LAKES INSURANCE SE, ET AL.                CIVIL ACTION

VERSUS                                          NO. 24-1729

LA MARCHE MANUFACTURING                         SECTION: D(1)
CO., ET AL.

<u>**ORDER AND REASONS**</u>

Before the Court is a Motion for Summary Judgment filed by Defendant Southern Power Systems, Inc.[1] The motion was set for submission on April 28, 2026, with any opposition due by April 20, 2026.[2]  No party has filed an opposition to the motion. After careful consideration of Defendant's memorandum, the record, and the applicable law, the Court **GRANTS** the Motion.

## I.    FACTUAL BACKGROUND

This case arises out of a power failure at an Atalco alumina plant in Gramercy, Louisiana.[3] Atalco contacted Southern Power Systems Inc. ("Southern Power") in May 2019 to discuss the replacement of an inverter and a C&D battery charger in one of the buildings at its plant.[4] Chambers Industrial Supply Inc. recommended that Southern Power install a compatible La Marche charger to replace the current one,

---

[1] R. Doc. 62.

[2] R. Doc. 63.

[3] R. Doc. 62-12. The Court draws the factual allegations from Defendant's Statement of Uncontested Facts, which the Court accepts as true due to Plaintiffs' failure to respond and Co-Defendant's failure to include a statement of contested facts in response to the instant Motion. L.R. 56.2 ("All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement."). The Court also supplements Defendant's Statement of Uncontested Facts with allegations from Plaintiff's Amended Complaint. (R. Doc. 54). The Court uses those facts for context and does not afford them the benefit of the truth.

[4] *Id.* at ¶ 3.

which Atalco approved.[5] Southern Power and Atalco then entered into an agreement to install the charger, which provided that "all work [was] to be performed at the direction of the Owner's Contract Administrator," namely Atalco's instrument electrical superintendent Terry Trepagnier.[6] Together, Southern Power and Atalco's lead electrician Todd Bourgeois performed the installation of the charger on September 4, 2019, which involved the replacement of the old charger with the new charger.[7] During the installation process, Atalco never requested that additional alarms or gauges be added to the new charger being installed, and Southern Power played no role in the configuration or monitoring of the alarms.[8] Approximately four years later, on June 29, 2023, Plaintiffs allege that the charger that Southern Power installed failed, causing damage to the equipment at Atalco's plant and the loss of production and income.[9] Plaintiffs, Atalco's insurers, filed suit in the 23rd Judicial District Court in St. James Parish in July 2024, alleging claims of product liability and negligence against La Marche Manufacturing Co. ("La Marche") and of negligence and breach of contract against Southern Power.[10] The case was removed to this Court on July 11, 2024.[11]

On March 18, 2026, Southern Power filed the instant Motion for Summary Judgment, arguing that Plaintiffs cannot meet their burden of proof at a trial on the

---

[5] *Id.* at ¶¶ 4-5.
[6] *Id.* at ¶¶ 6-7.
[7] *Id.* at ¶¶ 8-9.
[8] *Id.* at ¶¶ 10-11.
[9] *Id.* at ¶ 2.
[10] R. Doc. 3-3.
[11] R. Doc. 3.

merits on their claims of negligence and breach of contract against Southern Power.[12] Southern Power contends that the record evidence demonstrates that Atalco approved the charger both for purchase and for installation and that the installation was performed by Southern Power and Atalco electricians under the direction of Atalco.[13] Southern Power asserts that there is no evidence that demonstrates a relationship between the installation of the charger and the incident at issue in the present case.[14]

Furthermore, Southern Power maintains that there is no evidence that the charger at issue was installed improperly or "that any such installation played a causal role in the subject incident."[15] As support for this contention, Southern Power points to the testimony of Atalco's Instrument Electrical Superintendent Terry Trepagnier who testified in his deposition that he has no reason to believe that the battery charger was installed improperly.[16] As to the installation of alarm outputs, Southern Power states that there is no evidence that Southern Power failed to install any alarm outputs requested by Atalco regarding the charger.[17] Southern Power points to Plaintiffs responses to Interrogatories seeking which specific alarm outputs and or relays were claimed not to be installed correctly. Plaintiffs responded with general objections and did not identify any alarm output.[18] Southern Power also

---

[12] R. Doc. 62-1 at p. 4.

[13] *Id.* at p. 5.

[14] *Id.* at p. 6.

[15] *Id.* at p. 7.

[16] *Id.* at p. 9. *Also see* R. Doc. 62-7 at p. 42. ("Q. As we sit here today, do you have any reason to believe that that battery charger was installed improperly? A. No, I don't.")

[17] *Id.* at pp. 10-11.

[18] *Id.*

again relies on the testimony of Atalco's Instrument Electrical Superintendent Trepagnier who testified that he, as Atalco's Superintendent, did not ask for additional alarms to be set up.[19] Because the breach of contract claim is based on the same grounds as the negligence claim, Southern Power argues that the lack of proof regarding any improper installation means that it is entitled to summary judgment on the breach of contract claim as well.[20] In short, Southern Power contends that

> the undisputed evidence clearly establishes that the charger was installed properly by Southern Power at the direction of Atalco, that the charger and alarm outputs were installed as requested by Atalco, that the subject charger operated without issue for four (4) years, and that the installation of the charger by Southern Power played no role in the subject incident[,][21]

which entitles it to summary judgment under Fed. R. Civ. P. 56.

The motion was set for submission on April 28, 2026, with responses in opposition due by April 20, 2026.[22] No party has responded. The Court now considers the motion.

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23]  A dispute is "genuine" if it is

---

[19] *Id. Also see* R. Doc. 62-7 at pp. 31-32. ("Q. --you did not ask for any additional alarms to be set up, correct? A. That is correct.")
[20] *Id*. at pp. 11-12.
[21] *Id*. at p. 12.
[22] R. Doc. 63.
[23] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"real and substantial, as opposed to merely formal, pretended, or a sham."[24]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[25]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[26]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[27]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[28]

If the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[29]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[30]

---

[24] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

[25] *Anderson*, 477 U.S. at 248.

[26] *Delta & Pine Land Co. v. Nationwide Agribus. Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[27] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[28] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[29] *See Celotex*, 477 U.S. at 322–23.

[30] *Id*. at 324 (quoting FED. R. CIV. P. 56(e)).

Finally, a party moving for summary judgment is not entitled to have their motion granted simply because their motion is unopposed.[31]  Rather, its burden remains the same as if the motion was opposed; the moving party must demonstrate that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law.[32]  That being said, where a party fails to file a response to a summary judgment motion, the court may accept as undisputed all of the facts listed in the moving party's statement of undisputed material facts.[33]

## III.   ANALYSIS[34]

Plaintiff insurers assert two claims against Southern Power: negligence and breach of contract. Plaintiffs allege that Southern Power "breached its duty to the Insured by one or more acts and/or omissions constituting negligence" in its actions related to the installation of the battery charger and "breached its contractual objections owed to the Insured through its acts and/or omissions" in its actions related to the installation of the battery charger.[35] Defendant Southern Power denies the allegations. The Court will address each claim in turn.

---

[31] *Homelife in the Gardens, LLC v. Landry*, No. 16-CV-15549, 2018 WL 341703, at *2 (E.D. La. Jan. 9, 2018) (quoting *Day v. Wells Fargo Bank N.A.*, 768 F.3d 435, 435 (5th Cir. 2014) (per curiam)).

[32] *Id.*; *see also* FED. R. CIV. P. 56.

[33] *See Lamelas v. Abud*, No. 22-CV-739, 2023 WL 3340851, at *1 (E.D. La. May 10, 2023) (quoting *Gonzales v. Abdurasulov*, No. 3:22-CV-654, 2022 WL 2717633, at *1 (W.D. La. July 13, 2022)); *see also* Local Rule 56.2.

[34] This matter is before the Court on diversity jurisdiction, so the Court applies Louisiana law. *See Weatherly v. Pershing, LLC*, 945 F.3d 915, 925 (5th Cir. 2019).

[35] R. Doc. 54 at pp. 7-9.

A. *Southern Power is entitled to summary judgment on Plaintiffs'*
    *negligence claim.*

In its motion, Southern Power argues that no evidence exists that the subject

charger was improperly installed or that Southern Power failed to install the charger

as directed by Atalco.[36]

Louisiana law provides that "[e]very act whatever of man that causes damage

to another obliges him by whose fault it happened to repair it" and that "[e]very

person is responsible for the damage he occasions not merely by his act, but by his

negligence, his imprudence, or his want of skill."[37] Louisiana courts utilize a duty-

risk approach to negligence claims. A plaintiff must prove five separate elements:

> (1) the defendant had a duty to conform his or her conduct to a specific
> standard of care; (2) the defendant failed to conform his or her conduct
> to the appropriate standard of care; (3) the defendant's substandard
> conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's
> substandard conduct was a legal cause of the plaintiff's injuries; and (5)
> actual damages.[38]

"A negative answer to any of the inquiries of the duty/risk analysis results in a

determination of no liability."[39] The instant motion centers on the breach and

causation elements.

Southern Power claims that there is no evidence that demonstrates that the

charger at issue was installed improperly and thus that it breached the duty owed to

Atalco; furthermore, it notes that Terry Trepagnier, Atalco's instrument electrical

---

[36] R. Doc. 62-1 at p. 4. Southern Power further maintains that there is no evidence to support Plaintiffs' breach of contract claim. Southern Power's argument as to the breach of contract claim will be addressed separately.
[37] La. Civ. C. art 2315, 2316.
[38] *Bufkin v. Felipe's Louisiana, LLC*, 171 So. 3d 851, 855 (La. 10/15/14).
[39] *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 12/18/06).

superintendent in charge of the installation testified that he had no reason to believe the battery was installed improperly and that he had no reason to believe that the charger was installed differently from the way that Atalco had previously approved.[40] Blake Allen, the modernization manager for Atalco, testified similarly.[41] In addition, neither the Root Cause Analysis Report commissioned by Atalco in the aftermath of the outage nor the report prepared by PCS2000 Lab evaluating the battery charger identified the installation of the charger as a cause of the incident at issue.[42]

Southern Power likewise contends that there is a lack of evidence that Southern Power failed to install certain alarm outputs when installing the battery charger.[43] Terry Trepagnier testified that Atalco did not request for any additional alarms to be set up.[44] Furthermore, there is no evidence in the record that Atalco requested that any additional alarms be added during the installation of the battery charger or that Southern Power failed to install alarms that Atalco did request.[45] The Root Cause Analysis Report notes that "low voltage alarms were activated," but states that the location of said alarms was ineffective.[46] However, there is no evidence that Atalco requested different, different placement, or additional alarms when the charger was installed four years prior.

---

[40] R. Doc. 62-1 at p. 9; R. Doc. 62-7, *Videotaped Deposition of Terry Trepagnier*, at p. 42.

[41] R. Doc. 62-2, *Videotaped Deposition of Blake Allen*, at p. 146.("Q: And what about installation? Do you have any information that would indicate that this was installed improperly? A: No, sir, I would not.").

[42] *See* R. Doc. 62-3, *Root Cause Analysis Report*, at p. 16; *see also* R. Doc. 62-9, *Report of PCS2000 Atalco Lab Testing and Evaluation of Battery Charger*.

[43] R. Doc. 62-1 at p. 10.

[44] R. Doc. 62-7 at pp. 31-32.

[45] *See id*. at p. 41 ("Q: All right. Do you recall ever requesting Southern Power to add any particular— A: No, sir. Q: — outputs or alarms? A: Nothing, no, sir.").

[46] R. Doc. 62-3 at p. 16.

Plaintiffs have pointed to no affidavits, depositions, answers to interrogatories, or other record evidence that demonstrates that a genuine issue of material fact exists as to whether Defendant's negligence caused the subject incident. Because Plaintiffs have failed to demonstrate a genuine issue of material fact regarding the causation and breach of the alleged negligence, nor has the Court found one on the evidence before it, both essential elements of a negligence claim under Louisiana law, summary judgment on this claim is appropriate.

### B. *Southern Power is entitled to summary judgment on Plaintiffs' breach of contract claim.*

Southern Power argues that because the breach of contract claim is "essentially the same as [Plaintiff's] negligence claim," it is entitled to summary judgment on this claim as well because there is no evidence that it installed the charger improperly.[47]

Under the Louisiana Civil Code, "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance."[48] "The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[49]

---

[47] R. Doc. 62-1.
[48] La. Civ. C. art 1994.
[49] *Favrot v. Favrot*, 68 So. 3d 1099, 1108–09 (La. App. 4 Cir. 2/9/11), *writ denied*, 62 So. 3d 127 (La. 5/6/11).

9

The breach of contract claim rests on whether Southern Power undertook an obligation to perform and failed to perform that obligation. Similar to the negligence claim, it requires proof that Southern Power improperly installed the charger at issue. In arguing that it is entitled to summary judgment on the negligence claim, Southern Power has both pointed to record evidence that demonstrates that the battery charger was not installed improperly and noted that there is a lack of evidence that improper installation led to the incident at issue in the present case.[50]

Defendant Southern Power, the movant, has pointed to the lack of record evidence regarding essential elements of Plaintiffs' claims, namely that Southern Power rendered defective performance of its obligations in the contract. As the Plaintiffs will bear the burden of proof at trial, the burden on summary judgment has shifted, and Plaintiffs have now failed to go beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial" on the breach of contract claim.[51] After a reasonable time for discovery, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[52] For that reason, the Court finds that summary judgment should be granted.

Because there is no genuine dispute of material fact, Defendant Southern Power, Systems, Inc., is entitled to judgment as a matter of law on this claim as well.

---

[50] R. Doc. 62-1 at pp. 11-12.

[51] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[52] *Id*. at 322.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Southern Power Systems, Inc.'s

Motion for Summary Judgment[53] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendant

Southern Power Systems, Inc., are **DISMISSED with prejudice**.

New Orleans, Louisiana, May 26, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[53] R. Doc. 62.

11